UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

v.　　　　　　　　　　　　　　　　　　　　Case No. 20-CR-196-2

STEPHEN SMITH,

_____

DEFENDANT'S SENTENCING MEMORANDUM
_____

Amidst a tsunami of fear and uncertainty cast upon the local and global population by a once-in-a-lifetime pandemic, Stephen Smith reached out and grabbed a lifeline dangled by his older brother Thomas. Such was the "unprecedented crisis" — as the Government aptly describes it — that Smith betrayed a law-abiding lifetime of positive contributions to his community for short-term financial security in the form of fraudulently obtained Government loans. He now comes before the Court for sentencing after pleading guilty for his role in a scheme orchestrated and directed by his brother to obtain loans under the CARES Act for which he and others did not honestly qualify. The Government is seeking a sentence at the low end of the 41–51-month guideline range. Smith asserts that such a sentence would be far greater than necessary to achieve the purposes of sentencing as they relate to him individually, and that a sentence of no more than 6-12 months of imprisonment is sufficient to do so under 18 U.S.C. § 3553(a).

Hart Powell, sc
Attorneys at Law
735 North Water Street
Suite 1212
Milwaukee, WI 53202
(414) 271-9595

## BACKGROUND

In March of 2020, Smith was working for Milwaukee Public Schools as a special education substitute teacher. With the exception of a 2-year hiatus around 2013-14, it is a job Smith lovingly undertook for 15 years. (PSR, ¶ 120). In the weeks leading up to March 13, 2020, the media was reporting more and more on a novel and deadly coronavirus sickening large swaths of the population in Asia and Europe and seemingly working its way here. And then, on March 13, 2020, it was here, in Stephen Smith's life, as Governor Tony Evers ordered all public and private schools to close. Though the order was originally temporary, by mid-April it was clear that MPS would not be returning to anything close to normal for the indefinite future. What that meant to Smith was that he was without work and the full and steady paycheck that came with it. Indeed, with essentially the entire U.S. economy shut down, there were no prospects for alternative work on the horizon. As it was for millions of Americans, it was a dark and uncertain time for Smith with fear and desperation lurking around the corner. In Wisconsin, new unemployment claims soared to over 100,000 by March 24, 2020 and the system simply could not keep up, with over 675,00 claims remaining unpaid towards the end of May, 2020[1].

The Federal government stepped in to try and stem the tide, passing the CARES Act with its Paycheck Protection Program loans designed to help small businesses keep employees on the payroll. Smith's brother Thomas was a small-

Hart Powell, SC
Attorneys at Law
735 North Water Street
Suite 1212
Milwaukee, WI 53202
(414) 271-9595

---

[1] Radcliffe, JR and Caughey, Erin, *A Timeline of How the COVID-19 Pandemic Has Played Out in Wisconsin*, Milwaukee Journal Sentinel, March 11, 2011. Accessible at: https://www.jsonline.com/in-depth/news/local/milwaukee/2021/03/11/timeline-how-covid-19-has-played-out-wisconsin/4522813001/

business owner and used the program, legitimately at first, for his own businesses. It turned out to be easy, so easy in fact that Thomas saw an opportunity to use others to obtain similar loans in exchange for a cut.

As a substitute teacher for a local public school, the CARES Act was of no help to Smith. Smith had a defunct LLC, however, that Thomas believed Smith could use to obtain a loan using fudged employment numbers. Faced with lost income and uncertain prospects for returning to work at any point in the near future, Smith made the first criminal choice of his life, working with Thomas to file a fraudulent loan application for a $242,500 PPP loan. Smith actually had designs on using the money to get his old auto transport business back up and running, but the scheme unraveled far too fast for anything to happen.

Thomas was not confronted with the same financial stress and urgency as his brother. As he candidly conceded ahead of his own sentencing, Thomas saw an opportunity and acted out of greed. Thomas sought out and helped create fraudulent loan applications for Samuel Davis, Jonathan Henley, Robert Hamilton, and Tarone Woods. In each instance, he commanded a hefty percentage of the loan proceeds for his assistance. Smith was not involved in obtaining any of those loans.

Thomas also asked Smith if he knew anybody with an LLC or company who would want to get a loan. Smith went to Marvin Fitzgerald, a young man Smith had known since he coached and mentored him as a child. They were very close, and Smith believed that Marvin was struggling financially also and that this might be a way for him to get some relief. Fitzgerald, however, did not have an LLC or

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

company. His friend Deon Petty did, however, and Fitzgerald introduced Petty to Smith. Smith, in turn, got Petty involved with Thomas, who created the necessary (and fraudulent) loan documents for Petty's application. Petty received a $155,000 loan, and he gave some of the proceeds to both Smiths and to Fitzgerald. In an obviously misguided effort to "help" Fitzgerald and obtain additional funds, Thomas, Smith and Fitzgerald attempted to put Fitzgerald in a position to receive PPP funds through an entity called New Beginnings Family Services, LLC. That application was denied, and in short order everyone's accounts were frozen. The gig was up, the indictments came, and Smith now appears before the Court having accepted responsibility for his actions.

## THE GUIDELINES

The PSR accurately calculates the guideline range at 41-51 months, based on an adjusted offense level of 22 in Criminal History Category I. (PSR, ¶ 127). This was the guideline range contemplated in Smith's plea agreement.

## 3553(a) FACTORS

It is the Court's obligation to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes of sentencing: to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; deterrence; protection of the public from the defendant; and provision of needed correctional treatment. 18 U.S.C. § 3553(a).

The guidelines are but an advisory starting point for the Court. The Court has discretion to impose an appropriate sentence for the individual defendant and

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

the surrounding circumstances, irrespective of the calculated guideline range. *See United States v. Musgrave*, 883 F.3d 709, 715 (7th Cir. 2018) And while the Court must consider the guideline range as part of its sentencing analysis, it "may not perfunctorily impose a guidelines sentence or even presume that such a sentence is appropriate in a given case." *United States v. Warner*, 792 F.3d 847, 855 (7th Cir. 2015)

A. The Nature and Circumstances of the Offense

As described in greater detail above, Smith's involvement in the fraudulent scheme was triggered by the financial desperation and uncertainty brought to bear by an unprecedented public health crisis. It is undeniable that but for the massive impact of the global COVID-19 pandemic, Stephen Smith would not have put himself in the position he is in today.

The Government does overstate Smith's role, repeatedly asserting that Smith was involved in the Davis and Hamilton loans. Smith denies that is true. (See Revised PSR Addendum, Dkt. #136, pg. 32-38) The Government's basis for this assertion is that the co-actors said so (Id.); but the circumstances suggest that Smith's denial carries more weight. First, as to the Davis loan, while Davis and Smith were college roommates, Smith had introduced Davis to Thomas long before the pandemic or the CARES Act existed. Davis told authorities that Thomas approached him about obtaining a PPP loan, and Thomas prepared all of the paperwork. This loan was done before any of the other loans that are the subject of this indictment, including Smith's. Davis seems to believe Smith was "involved" in

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

the loan only because Smith rode with Thomas when he met Davis to pick up the $75,000.00 check that Davis had made out to Thomas's company. There is no evidence that Smith was involved in recruiting Davis for the loan, helped prepare the loan application, intended to share in the proceeds of the loan, or did share in the proceeds of the loan. In short, Smith was simply not involved in Davis's loan.

As to the Hamilton loan, Smith's role, such as it was, was telling Hamilton that Thomas had gotten a PPP loan and that Hamilton could talk to him about the process. Notably, this conversation also occurred before Smith filed his loan application. Hamilton had known both of the Smith brothers for years; it did not take an introduction by Smith for Hamilton to get to Thomas. Smith did not suggest or otherwise indicate to Hamilton that he pursue a fraudulent loan. Thomas, again, prepared all the paperwork for this loan. Hamilton's belief in Smith's involvement seems to based on Thomas's reported suggestion to Hamilton that he pay Smith $10,000.00. According to Hamilton, this suggestion by Thomas was made after Hamilton had delivered a check for $30,000 to Thomas. Smith never asked for any of Hamilton's loan proceeds and he had no idea that Thomas made that request of Hamilton, or even Thomas actually did. Furthermore, Hamilton himself told authorities that he had no idea that Smith was involved in the fraud until after the indictment came down. It is difficult to imagine Smith being involved in Hamilton's fraudulent loan without Hamilton having any indication that was the case. In addition, Hamilton's application was done at the same time as Smith's. Again, Smith's involvement in the Hamilton loan might be more believable if Smith

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

himself had already secured a loan and would thus be in a position to tell Hamilton how the process worked. But that is not the case; Thomas prepared the loan applications for Smith and Hamilton at essentially the same time.

Smith was responsible for bringing Fitzgerald and Petty into the fold, but he did not play that role, or any consequential role, in the Davis or Hamilton loans.

B. The History and Characteristics of the Defendant

Smith is 42 years old and finds himself in the criminal justice system for the first time in his life. He was born and raised in Milwaukee in a stable, loving household. He graduated from Whitefish Bay High School in 1996, and earned a bachelor's degree in Marketing from UW-Lacrosse and a Masters in Business Administration from Cardinal Stritch University.

He has dedicated his adult life to teaching and mentoring young kids in Milwaukee, both as a long-term substitute teacher for special education students at MPS, and as a youth basketball coach. He has guided numerous young men from Milwaukee's playgrounds to college, including some of the country's most prestigious universities. (See Exh. 1, Letter of Renee Johnson; Exh. 2, Letter of Julie Jackson).

As the PSR and attached letters attest, members of his family and of the community describe him in glowing terms, and all were shocked to learn of his involvement in this offense. His brother Robert described him as a "kind, smart, and driven person" who "gets along with everybody and is well-respected." (Dkt. #136, ¶ 108). His lifelong friend, Antwan Harris, who is an education administrator

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

in Minnesota, described Smith as "an industrious, hard-working family man who is community minded and other-centered." (Exh. 3, Letter of Antwan Harris). His wife, Maronnia, described Smith as "being a great person who is helpful and loving." (Dkt. #136, ¶ 110)

Unfortunately, Smith's participation in the scheme has come at a significant personal cost. He and his wife have separated as a result. Maronnia described this case as having a "profound" impact on her and her family. She and Smith have separated because Smith's involvement in this offense hurt her and turned her life upside down. She still believes Smith "can return to being a great asset to the family and community" and "the same person he was before his involvement in this offense." She hopes that their marriage will survive but acknowledges that there is uncertainty because "their life is not in their own hands anymore." (Id.)

In addition, his mental health has suffered greatly as a result of this case. He began getting treatment for anxiety problems in May of 2020, after he engaged in the criminal behavior at issue but before the involvement of law enforcement. He has engaged in counseling and continues to do so to manage the mental health issues that have come to the for based on his behavior that led to this case. (Dkt. #136, ¶¶113-14) Smith also has significant medical challenges. He is a type-2 diabetic who requires twice-daily injections. He also suffers from neuropathy in his feet and takes medication for high blood pressure. He also contracted COVID-19 during the pendency of the case and became very ill, taking nearly 2 months to fully recover. (Dkt. #136, ¶112)

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

8

Case 2:20-cr-00196-BHL    Filed 07/09/21    Page 8 of 13    Document 139

### C. Appropriate Sentence

In devising a sentence, the Court must consider the factors set forth in 18 U.S.C. §3553(a) and impose a sentence sufficient but not greater than necessary to satisfy the purposes of sentencing delineated in § 3553(a)(2): (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. In addition, the Court must consider the need to avoid disparities in sentencing. 18 U.S.C. § 3553(a)(6).

#### 1. Providing just punishment

The conduct at issue here is undoubtedly serious, as can be said for essentially all criminal conduct, but it is also relatively small-scale in light of the types of loss numbers that appear typical for PPP loan fraud. (See, e.g. Dkt #138, pg. 12; Govt. Sent. Memo identifying sentences imposed in other cases around the country). So while providing just punishment is an appropriate consideration, a guidelines sentence in this case would be beyond what is necessary to satisfy this sentencing purpose.

#### 2. Deterrence

A lengthy period of imprisonment is not needed to achieve sufficient deterrence in this case. Smith has paid a heavy price already. He has greatly damaged his standing in the community, which is a huge part of who he is and has

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

been for his entire adult life. He acted in a way contrary to the ideals he preaches to his students and kids that he coaches. He has put his marriage in grave jeopardy, and he will be under a significant restitution order that will take him years to repay. *See, Warner,* 792 F.3d at 861 (recognizing that financial penalties may serve as a deterrent).

### 3. Protection of the Public from Further Crimes by Smith

There is no need to protect the public from further crimes by Smith through incarceration. At 42-years-old, Smith comes before the Court for his first contact with the criminal justice system. His crime was driven by a once-in-a-lifetime public health crisis that turned his world upside down and left him without work and no prospects for work given the havoc wreaked by the virus. It is appropriate to discount his behavior under these circumstances, particularly because he has no history of greed, manipulation or malfeasance. There is simply nothing to indicate that Smith presents a risk of repeat criminal behavior.

### 4. Providing Smith with Needed Programming and Care in Most Effective Manner

Smith has an advanced education and no treatment needs of any kind that would most effectively be provided in an institutional setting. He is able to work, and the community and victims would be better served by Smith being allowed to return to the community quickly to work and pay towards the substantial restitution obligation that will be imposed upon him.

### 5. Need for the Sentence to Avoid Unwarranted Disparities

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

It is clear that Thomas Smith was the driving force behind this criminal scheme. Smith is nowhere near the level of culpability of his brother Thomas, the undeniable leader and conductor of the scheme, who had a criminal record and received a sentence of 51 months. The other co-defendants sentenced to date have received:

- Robert Hamilton: 6 months confinement, 2 years supervised release
- Samuel Davis: 6 months confinement, 2 years supervised release
- Deon Petty: 1 year and 1 day of confinement, 2 years of supervised release
- Marvin Fitzgerald: 2 years probation

Samuel Davis is the best comparison for Smith. Thomas approached Davis about applying for a PPP loan. Thomas prepared a fraudulent loan application for Davis, the loan was funded, and Davis paid Thomas $75,000.00. Davis went out and brought another person, Jonathan Henley, to Thomas to participate in the scheme. Thomas then prepared a fraudulent loan application for Henley for $212,500, of which Thomas demanded $112,500. The Government has asserted that Davis "appears to have committed this offense due to a desire to provide for his family and restart his business. . ." (Dkt. #103, Pg. 6) Davis also had no criminal record, had a steady employment history, and ran a "mentorship program that operated a youth sports league."

Like Davis, Smith had no criminal record and was brought into the scheme by Thomas. Like Davis, Thomas prepared Smith's fraudulent loan paperwork and

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

Smith gave him $65,000 of the proceeds. Like Davis, the Government acknowledges that Smith's entry to the scheme was not driven by greed, but by a "desire to provide for his family, as he was unemployed as a result of the pandemic." (Dkt. #138, pg. 10) Like Davis, Smith sought out others to connect with Thomas for purposes of applying for loans. The only distinction here is that Smith brought on two individuals —Petty and Fitzgerald—while Davis only brought in Henley. This provides some basis for distinguishing Smith from Davis for sentencing purposes, but not significantly.

The Government has listed several cases from the around the country to indicate the types of sentences being imposed for PPP fraud, and those examples support the below-guidelines sentence Smith seeks here. (Dkt. #138, pg. 12) The two longest sentences —78 and 41 months—involved losses of $3.9 million and $1.9 million, respectively. The two shorter sentences—12 months and 60 days—involved losses of $1.4 million and $900,000, respectively. With loss as the primary driving force behind sentencing in fraud cases, the loss attributable to Smith's conduct is below each of the examples provided by the Government, and significantly so as to three of them.

## RESTITUTION

Lastly, Smith asserts that his restitution amount should be $397,500, with $155,000 joint and several with Deon Petty and Thomas Smith, and $242,500 joint and several with Thomas Smith. The Government's position on restitution seeks on an equitable basis to apportion restitution amongst the co-defendants by the

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

individual loans with which each was involved. (See, Dkt. #87). As detailed above, Smith did not have any hand in the Davis and Hamilton loans; accordingly, per the Government's basis for apportionment, Smith should not be held responsible for those loans in a restitution order.

Dated at Milwaukee, Wisconsin, this 8th day of July, 2021.

Respectfully submitted,

_____
Craig S. Powell
HART POWELL, S.C.
735 North Water Street, Ste 1212
Milwaukee, WI 53202
Telephone: (414) 271-9595
Telefax: (414) 271-3701
cspowell@kohlerandhart.com

**HART POWELL, SC**
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595